# IN THE UNITED STATES DISTRICT COURT
# OF DELAWARE

| | |
|---|---|
| NIKITA ROBINS | : |
| | : |
| Plaintiff | : |
| | : JURY DEMANDED |
| v. | : |
| | : No. |
| ARROW FINANCIAL SERVICES, L.L.C. | : |
| | : |
| and | : |
| | : |
| NEAL J. LEVITSKY, individually | : |
| and on behalf of FOX ROTHSCHILD, LLP, | : |
| | : |
| Defendants | : |

## **C O M P L A I N T**

NOW COMES the Plaintiff, NIKITA ROBINS, and her attorneys, KIMMEL & SILVERMAN, P.C., and for her Complaint against the Defendants, ARROW FINANCIAL SERVICES, L.L.C. and NEAL J. LEVITSKY, individually and on behalf of FOX ROTHSCHILD, LLP,

Plaintiff alleges and states as follows:

### **PRELIMINARY STATEMENT**

1. Plaintiff's Complaint is for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter the "FDCPA"), 15 U.S.C. § 1692, *et seq*.

2. Plaintiff is an adult individual who resides in New Castle, Delaware.

3. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1692a(3), as she is a natural person allegedly obligated to pay a debt.

4. Defendant Arrow Financial Services, LLC (hereafter Defendant Arrow) is a limited liability corporation of the State of Illinois with its principal place of business at 5996 West Touhy Avenue, Niles, IL 60714.

5. Defendant Neal J. Levitsky (hereafter Defendant Levitsky), individually and on behalf of Defendant Fox Rothschild, LLP (hereafter Defendant Fox), is an attorney with an office located at Citizens Bank Center, 919 North Market Street, Suite 1300, P.O. Box 2323, Wilmington, DE 19899-2323.

6. At all relevant times, Defendants as a "debt collector" within the meaning of 15 U.S.C. § 1692a(6), in that Defendants held themselves out to be a company or individual, collecting a consumer debt allegedly owed to another.

7. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

8. The alleged debt at issue arose out of transactions that were primarily for personal, family or household, purposes.

## PRELIMINARY STATEMENT

9. The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. §1692 et seq. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. §1692k. The operative provisions

of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

10. In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Simply, designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, the FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements, in connection with the collection of a debt.

11. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692(b).

12. Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purposes of the FDCPA are to "eliminate abusive debt collection

practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

## FACTUAL ALLEGATIONS

13. In March of 2008, Defendant Arrow commenced a misleading and deceptive campaign against Plaintiff, attempting to collect a debt allegedly owed by Plaintiff.

14. Throughout the deceptive campaign against Plaintiff, Plaintiff denied owing the alleged debt and requested Defendants validate the alleged debt.

15. To date, despite Plaintiff's repeated requests, Defendants have failed to validate the alleged debt.

16. Plaintiff believes, and therefore avers, Defendants did not have proof that Plaintiff owed a debt prior to attempting to collect a debt from Plaintiff.

17. Plaintiff believes, and therefore avers, Defendants did not have proof the dates of alleged purchases, the amount of alleged purchases, or the items allegedly purchased by Plaintiff with regard to the underlying debt being collected upon.

18. Moreover, Plaintiff believes, and therefore avers, Defendants did not have proof that Plaintiff was liable for the alleged debt, if any.

19. Finally, Plaintiff believes, and therefore avers, Defendants did not have proof of chain of title of the debt; namely Defendants did not have proof that the alleged debt had been assigned from the original creditor to Defendant Arrow.

20. Despite its inability to validate the alleged debt and its complete lack of legal foundation whatsoever, Defendants attempted to collect monies supposedly owed by Plaintiff for a charge card, account number 553946722103.

21. In fact, Defendants even filed suit against Plaintiff in the Court of Common Pleas of New Castle County, attempting to collect the alleged debt, despite Defendants' inability to validate the alleged debt and its complete lack of legal foundation.

22. Defendants started their misleading and deceptive campaign against Plaintiff, on or about March 19, 2008, when Defendant Arrow sent a letter to Plaintiff in an effort to collect a personal obligation, for account number 553946722103, allegedly owed by Plaintiff. (A true and correct copy of said correspondence is attached hereto as Exhibit A.)

23. Defendant Arrow failed to disclose its identity as a debt collector, but its communication clearly indicated that it was seeking to collect an account from Plaintiff. (A true and correct copy of the correspondence referred to is attached hereto as Exhibit A.)

24. In this correspondence, Defendant Arrow misled Plaintiff about the status of the alleged debt by indicating there was a "***settlement agreement***" in the amount of $1,524.54. However, no settlement had been reached through the court or by the parties themselves. (A true and correct copy of said correspondence is attached hereto as Exhibit A.)

25. Defendant Arrow used this language to mislead Plaintiff to believing a settlement had been reached for Plaintiff's benefit when in reality Defendant Arrow did not even have proof that Plaintiff owed the monies, which Defendant Arrow was attempting to collect. (A true and correct copy of said correspondence is attached hereto as Exhibit A.)

26. Defendant Arrow then went on to threaten, "Failure to comply with above mentioned terms will nullify the settlement agreement and the balance in full will be due at once." (A true and correct copy of said correspondence is attached hereto as Exhibit A.)

27. Defendant Arrow made this threat solely in an effort to scare Plaintiff into making said payment.

28. In this manner, Defendant Arrow made false, deceptive, and misleading representations to Plaintiff by implying that Plaintiff could be found liable for a breach of a settlement agreement when Plaintiff had never entered into a settlement agreement.

29. Moreover, in its correspondence, Defendant Arrow failed to provide the basic information necessary for Plaintiff to verify the debt, which Defendant Arrow was seeking to collect.

30. Specifically, in violation of federal law, Defendant Arrow failed to identify the original creditor of the alleged debt. (A true and correct copy of said correspondence is attached hereto as Exhibit A.)

31. Instead, Defendant Arrow merely referenced Plaintiff's "SHERMAN ACQUISTION LLC account." 553946722103

32. Plaintiff, however, never opened an account with "Sherman Acquisition LLC".

33. In fact, Sherman Acquisition LLC is a debt collection company, not a creditor.

34. By providing the wrong name of the original creditor, Plaintiff had no means of verifying the debt in question.

35. Defendant Arrow also failed to attach any documents showing that Defendant Arrow had been assigned or was the successor in interest to the debt allegedly owed by Plaintiff to the original creditor.

36. Moreover, Defendant Arrow failed to reference or attach a signed agreement between Plaintiff and the original creditor, the documents detailing the charges made on the account, the payments made by Plaintiff, the interest charges, and/or any late fees.

37. Defendant Arrow failed to allege when the account went into default.

38. Finally, Defendant Arrow failed to provide any documents substantiating the total settlement amount sought.

39. Shortly after sending this misleading correspondence to Plaintiff, Defendant Arrow mailed another letter to Plaintiff, dated May 14, 2008, in reference to account number 553946722103 (hereafter "the account"). (A true and correct copy of said correspondence is attached hereto as Exhibit B.)

40. Yet again, Defendant Arrow was seeking to collect on an alleged debt in reference to account number 553946722103, but in this correspondence, Defendant Arrow lists the account as a "Sears-Citi-Sears", not "Sherman Acquisition LLC, as in its prior correspondence in reference to this account. (A true and correct copy of the correspondence referred to is attached hereto as Exhibits A & B.)

41. Defendant Arrow provided no explanation for how the account had been changed from a "Sherman Aquistion LLC" account to a "Sears-Citi-Sears" account, causing Plaintiff much confusion.

42. Defendant Arrow again failed to disclose its identity as a debt collector. (A true and correct copy of the correspondence referred to is attached hereto as Exhibit B.)

43. Defendant Arrow again failed to provide the dates of alleged purchases, the amount of alleged purchases, or the items allegedly purchased by Plaintiff with regard to the underlying debt being collected upon.

44. Interestingly, the amount of the debt Defendant Arrow was attempting to collect from Plaintiff had decreased to $1,843.55 in comparison to the $2,032.72 being sought in Defendant Arrow's previous correspondence. (See Plaintiff's Exhibits A & B).

45. Defendant Arrow provided no explanation for how the amount of the debt had decreased when Plaintiff had not made any payments with regard to the account.

46. Plaintiff believes, and therefore avers, Defendant Arrow contracted with another debt collector, National Enterprise Systems (hereafter "NES") to have NES collect the alleged debt from Plaintiff.

47. Plaintiff believes, and therefore avers, Defendant Arrow did not provide NES with proof that Plaintiff owed a debt prior to contracting with NES for the purposes of collecting a debt from Plaintiff.

48. Plaintiff believes, and therefore avers, Defendant Arrow failed to provide NES with the dates of Plaintiff's alleged purchases, the amount of Plaintiff's alleged purchases, or the items allegedly purchased by Plaintiff.

49. Plaintiff believes, and therefore avers, Defendant Arrow failed to provide NES with the proper chain of title, establishing Defendant Arrow as the party in interest with regard to the debt allegedly owed by Plaintiff.

50. On or about July 30, 2008, NES mailed a letter to Plaintiff seeking payment for an alleged debt for account number 553946722103, listing Defendant Arrow and Sherman Financial as the "Service Provider". (See Plaintiff's Exhibit C).

51. Defendant Arrow, via its agent, NES, again failed to provide Plaintiff with the name of the original creditor, thereby confusing Plaintiff as to the monies sought.

52. Moreover, said correspondence references a "Sherman Financial UNCLASSIFIED BANKCARD".

53. Plaintiff had never opened a bankcard with "Sherman Financial", and thus, Plaintiff had no way to verify the monies being sought.

54. Additionally, Defendant Arrow, via its agent, NES, failed to provide the dates of alleged purchases, the amount of alleged purchases, or the items allegedly purchased by Plaintiff with regard to the underlying debt being collected upon.

55. The amount of the debt NES was attempting to collect on Defendant Arrow's behalf had changed yet again.

56. Now, Defendant Arrow, via its agent, NES, was seeking $1,887.21 from Plaintiff instead of the $1,843.55 being sought in Defendant Arrow's previous correspondence. (See Plaintiff's Exhibits C & B).

57. No explanation was provided for how the amount of the debt had increased.

58. On or about September 28, 2008, Defendant Arrow's agent, NES, again sought to collect on an alleged debt for account number 553946722103.

59. Defendant Arrow, via its agent, NES, still failed to provide Plaintiff with the name of the original creditor, thereby causing Plaintiff confusion.

60. Said correspondence again referenced a "Sherman Financial UNCLASSIFIED BANKCARD", which Plaintiff had never opened.

61. Defendant Arrow, via its agent, NES, failed to provide the dates of alleged purchases, the amount of alleged purchases, or the items allegedly purchased by Plaintiff with regard to the underlying debt being collected upon.

62. Plaintiff believes, and therefore avers, Defendant Arrow contracted with yet another debt collector, Mann Bracken, LLP (hereafter "Mann Bracken") to have Mann Bracken collect the alleged debt from Plaintiff.

63. Plaintiff believes, and therefore avers, Defendant Arrow did not provide Mann Bracken with proof that Plaintiff owed a debt prior to contracting with Mann Bracken for the purposes of collecting a debt from Plaintiff.

64. Plaintiff believes, and therefore avers, Defendant Arrow failed to provide Mann Bracken with the dates of Plaintiff's alleged purchases, the amount of Plaintiff's alleged purchases, or the items allegedly purchased by Plaintiff.

65. Plaintiff believes, and therefore avers, Defendant Arrow failed to provide Mann Bracken with the proper chain of title, establishing Defendant Arrow as the party in interest with regard to the debt allegedly owed by Plaintiff.

66. On or about February 18, 2009, Mann Bracken mailed a letter to Plaintiff seeking payment for an alleged debt, listing Arrow Financial Srvcs as the "above-named creditor". (See Plaintiff's Exhibit E.)

67. In the correspondence from Defendant Arrow's agent, Mann Bracken, Defendant Arrow's agent states, "Our client *alleges* that you owe the above-referenced balance" but goes on to acknowledge that "At this time, no attorney with this Firm has personally reviewed the particular circumstances of your account." (See Plaintiff's Exhibit E; emphasis added.)

68. Despite having failed to research the alleged debt it sought to collect, Defendant Arrow's agent, Mann Bracken, then goes on to suggest to Plaintiff, "If you have an income tax refund, perhaps you can use the proceeds to pay this account." (See Plaintiff's Exhibit E.)

69. At no time did Defendant Arrow's agent, Mann Bracken, advise Plaintiff of the tax consequences of using an income tax refund to pay this alleged debt.

70. Defendant Arrow's agent, Mann Bracken, neither advised Plaintiff that said correspondence did not constitute tax advise nor advised Plaintiff to seek tax advice from an accountant.

71. Defendant Arrow, via its agent, Mann Bracken, failed to provide the dates of alleged purchases, the amount of alleged purchases, or the items allegedly purchased by Plaintiff with regard to the underlying debt being collected upon.

72. On or about April 28, 2009, Defendant Levitsky, on behalf of Defendant Arrow Financial Services, L.L.C., filed a one (1) paragraph Complaint against Plaintiff in the Court of Common Pleas for New Castle County, seeking to collect from the instant Plaintiff, Nikita Robins, $1,887.21 for "the balance due and owing for goods sold and delivered and/or services rendered and/or a revolving account". (See Plaintiff's Exhibit F.)

73. Defendant Levitsky, on behalf of Defendant Arrow, failed to attach to the Complaint brought against Plaintiff, any proof that Defendant Arrow was the party in interest related to any debt allegedly owed by Plaintiff. (See Plaintiff's Exhibit F.)

74. Similarly, Defendant Levitsky, on behalf of Defendant Arrow, failed to attach to the Complaint against Plaintiff any documentation, establishing Plaintiff Robins opened account number 0553946722103. (See Plaintiff's Exhibit F.)

75. Defendant Levitsky, on behalf of Defendant Arrow, failed to attach to the Complaint against Plaintiff any documentation establishing the dates of Plaintiff Robins' alleged purchases, the amount of Plaintiff's alleged purchases, or the items allegedly purchased by Plaintiff. (See Plaintiff's Exhibit F.)

76. Upon being sued, Plaintiff Robins called Defendant Arrow, requesting the name of the original creditor and information about the alleged debt. Plaintiff spoke to Defendant Arrow's agent, who identified herself as Maria.

77. Defendant Arrow's agent, Maria, attempted to look up the information relating to Plaintiff's alleged account.

78. Defendant Arrow's agent was unable to provide a single piece of information concerning the name of the creditor or the alleged charges.

79. Plaintiff Robins also called Defendant Arrow's counsel, Defendant Levitsky, to inquire about the details of the debt, which Defendant Levitsky was attempting to collect on behalf of Defendant Arrow. Defendant Levitsky advised he did not possess the information Plaintiff sought, and instead, directed Plaintiff Robins to again call Defendant Arrow.

80. Unsatisfied with the result of her telephone calls to Defendant Arrow and Defendant Levitsky, Plaintiff sent correspondence to Defendant Arrow, copying Defendant Levitsky, and the Court of Common Pleas of New Castle County, requesting Defendants validate the debt, from which Defendants sought to collect. (See Plaintiff's Exhibit G.)

81. Plaintiff Robins received no response to her oral or written requests to validate the debt.

82. Despite this failure to validate, Defendants continued in their litigation against Plaintiff Robins.

83. On or about December 21, 2009, Defendant Arrow mailed a letter to Plaintiff in reference to account number 0553946722103. (See Plaintiff's Exhibit H).

84. Finally, after improperly seeking to collect an alleged debt for a year and a half, Defendant Arrow advised Plaintiff "In light of the information that you have provided to us, we

have closed this account and have ceased all further collection efforts. Please note that Arrow is not reporting any information regarding this account to any credit-reporting agency." (See Plaintiff's Exhibit H).

85. Interestingly, the amount of the debt Defendant Arrow was ceasing to collect from Plaintiff had increased to $1,993.21 in comparison to the $1,843.55 previously sought in Defendant Arrow's correspondence. (See Plaintiff's Exhibits B & H).

86. Defendant Arrow provided no explanation for how the amount of the debt had increased yet again.

87. Plaintiff relied on Defendant Arrow's representation in said correspondence that it had closed Plaintiff Robins' account and it had ceased all collection activities.

88. However, Plaintiff's reliance on Defendant Arrow's representation was to her determinant because thereafter, Defendant Arrow, via its counsel, Defendant Levitsky, attempted to enter a judgment against Plaintiff Robins. (See Plaintiff's Exhibit I.)

89. By seeking to enter default judgment against Plaintiff, Defendant Levitsky ignored or failed to review his client's instructions in the correspondence dated December 21, 2009 from Defendant Arrow to Plaintiff.

## CONSTRUCTION OF APPLICABLE LAW

90. The FDCPA is a strict liability statute. <u>Taylor v. Perrin, Landry, deLaunay & Durand</u>, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." <u>Russell v. Equifax</u> A.R.S., 74 F. 3d 30 (2d Cir. 1996); see also <u>Gearing v. Check Brokerage</u> Corp., 233

F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); <u>Clomon v. Jackson</u>, 988 F. 2d 1314 (2d Cir. 1993).

91. The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. <u>Sprinkle v. SB&C Ltd.</u>, 472 F. Supp. 2d 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. <u>Clark v. Capital Credit & Collection Services, Inc.</u>, 460 F. 3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C §1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." <u>Johnson v. Riddle</u>, 305 F. 3d 1107 (10th Cir. 2002).

92. The FDCPA is to be interpreted in accordance with the "least sophisticated" consumer standard. See <u>Jeter v. Credit Bureau, Inc.</u>, 760 F.2d 1168 (11th Cir. 1985); <u>Graziano v. Harrison</u>, 950 F. 2d 107 (3d Cir. 1991); <u>Swanson v. Southern Oregon Credit Service</u>, Inc., 869 F.2d 1222 (9th Cir. 1988). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Id*. The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. <u>Clomon</u>, 988 F. 2d 1318.

## COUNT I

93. Defendant's conduct violated the FDCPA in multiple ways, including but not limited to:

   a) Engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person when collecting a debt, in violation of 15 U.S.C. §1692d;

   b) Misrepresenting the character, amount or legal status of the debt in violation of 15 U.S.C. §1692e(2)(A);

   c) Misrepresenting the legal status of the debt, in violation of 15 U.S.C. §1692e(2)(B);

   d) Threatening to take action that cannot legally be taken or that is not intended to be taken, in violation of 15 U.S.C. §1692e(5);

   e) Falsely representing or implying conduct in order to disgrace the consumer in violation of 15 U.S.C. §1692e(7);

   f) Using any false representation or deceptive means to collect or attempt to collect any debt, in violation of 15 U.S.C. §1692e and e(10);

   g) Failing to identify itself as a debt collector, in violation of 15 U.S.C. §1692e(11);

   h) Using unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. §1692f;

   i) The collection of amounts expressly not permitted by law in violation of 15 U.S.C.§1692f(1);

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendant for the following:

      A.    Declaratory judgment that Defendant's conduct violated the FDCPA;

      B.    Actual damages;

      C.    Statutory damages;

      D.    Costs and reasonable attorney's fees; and,

      E.    For such other and further relief as may be just and proper.

## **PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

Respectfully submitted this 11th day of June 2010.

Respectfully submitted,

Date: 6/11/10        By:  s/ Kate Shumaker

Kate Shumaker
Kimmel & Silverman, PC
Silverside Carr Executive Center
Suite 118, 501 Silverside Road
Wilmington, DE 19809
(302) 791-9373 phone
(302) 791-9476 fax